## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### MARY GREEN GOD V. DAVID A. HURT AND EVA MOORE HURT *

March 3, 1978.

Record No. 761253.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, JJ.

*Robert A. McGinnis (Craig A. Kawamoto; McGinnis & Craig, Ltd., on brief), for appellant.*

*George F. Ball for appellees.*

---

\* For rehearing of this Case see *God v. Hurt*, 219 Va. 160 (1978).

Compton, J., delivered the opinion of the Court.

In this chancery proceeding, we consider whether the purchasers under a contract by a married woman for the sale of real estate are entitled to specific performance of that contract, with an abatement in the purchase price due to the inchoate curtesy interest of the seller's husband.

The facts are substantially not disputed. In April of 1969, appellees David A. Hurt and Eva Moore Hurt, his wife, became interested in the purchase of a newly constructed townhouse in Alexandria owned by General Properties Corporation, of which appellant Mary Green God was an officer and principal stockholder. During August of that year, as the result of negotiations with Mrs. God, the Hurts entered into a written contract to purchase the property, Mrs. God executing the agreement on behalf of the corporation. The purchase price was $50,950 and the conveyance was to be by general warranty deed.

The Hurts were unable to arrange the necessary financing, upon which the contract was contingent. Because of her "interest [in] selling the house to" the Hurts, Mrs. God then "spent months trying to find financing for them." Finally, a lender became willing to make the loan, but only to Mrs. God personally. To accomplish this, the corporation conveyed the property in October of 1969 to Mrs. God, the deed reciting "as and for her sole and separate equitable estate". The loan was then made to her and evidenced by a note secured by a first deed of trust on the property, both of which were executed by Mrs. God and Andrew God, her husband. At the same time, the Hurts agreed to make the required monthly payments under the deed of trust and to eventually assume its obligations. They also, at that time, executed a promissory note payable to Mrs. God due in five years, and a second deed of trust (never recorded) on the property to secure the advance of an additional sum of $10,500, which was necessary to make up the difference between the contract price and the sum of the permanent financing ($37,500) plus the cash ($2,950) the Hurts were able to pay at the time.

These "interim" arrangements, described by Mrs. God as a "holding transaction", were the subject of an October 30, 1969 written modification to the August sales contract. The modified agreement, signed by Mrs. God, as "Seller", and the Hurts, recited that the Hurts desired to obtain immediate possession of

the premises with the right to make a complete settlement of the purchase when their financial condition improved sufficiently for them to fund the transaction on their own. At the time, the Hurts had not retained their own attorney but were dealing through counsel selected by Mrs. God.

No attempt was made in October to pass title to the Hurts, but in December of 1969 a deed was executed in which title was purportedly conveyed from Mrs. God to the Hurts. This deed was never delivered to the Hurts or recorded.

Almost five years later, in July of 1974, the Hurts, who had been in possession of the premises and had made the payments under the two deeds of trust, prepared for final settlement under the modified agreement. They sought the advice of independent counsel who then determined that the language of the 1969 deed from the corporation to Mrs. God was insufficient to enable her individually to convey title to the property free and clear of the curtesy rights of her husband. *See* Code § 64.1-21. When Mrs. God tendered a deed in September of 1974, the Hurts, on the advice of counsel, refused to accept it, insisting on the joinder of her husband. Although there was a conflict in the evidence on this point, the trial court found as a fact that the husband refused to sign the deed. Apparently, the Hurts had complained about defects resulting from artless construction of the dwelling, and Andrew God declined to join in the deed because the Hurts would not sign a release absolving the corporation and the Gods from all liability surrounding the sale of the property.

This suit followed in October of 1974. Naming Mrs. God and her husband parties defendant, the Hurts alleged they were ready, willing and able to comply with the terms of the August 1969 sales contract, as modified, and were ready to pay the remainder of the purchase money. They prayed that both defendants be required specifically to perform the agreement by executing and delivering a "good and sufficient" general warranty deed of the property.

Subsequently, Andrew God filed a demurrer to the bill on the ground that he had no privity of contract with the Hurts because he was not a party to the sales contract or to the agreement modifying it. Thereafter, he was dismissed as a party defendant by consent of the parties.

Following a June 1975 *ore tenus* hearing, the trial court, in a letter opinion, decided that the Hurts should have the option of

either: (1) taking title to the property, subject to Mr. God's curtesy interest, with an appropriate abatement in the purchase price for the commutated value of that interest, as determined by Code § 55-269.1, or (2) "abandon[ing]" the contract and recovering from Mrs. God all sums paid to her on the purchase price of the property, less a reasonable sum for the use and occupancy of the property while they had been in possession. The Hurts chose the first option and, after another hearing, the court below, in a May 1976 decree, determined the value of the husband's curtesy interest to be $1,597.25 and ordered Mrs. God to deliver a general warranty deed conveying her interest in the property to the Hurts. From this decree, we granted Mrs. God an appeal, limited to the consideration of the foregoing issue, and one other which Mrs. God did not address upon oral argument.

Relying principally on *Haden* v. *Falls*, 115 Va. 779, 80 S.E. 576 (1914), Mrs. God argues that in the absence of any allegation of fraud, a court of equity will not, at the instance of the purchaser, decree specific performance of a wife's contract to sell her land, in which the husband has a contingent right of curtesy, which he refuses to release, when the purchaser demands an abatement of the purchase price by reason of such refusal. Accordingly, she says, the trial court erred in granting specific performance under these circumstances.

The Hurts, in the trial court, urged the chancellor to require Mrs. God to secure from the corporation, which they allege she controlled, a corrected deed with language sufficient to convey title to the property to her as and for her sole and separate equitable estate, with full power to alienate without the joinder of her husband. This request was denied, the trial court ruling that since neither the corporation nor Andrew God were parties to the suit, no decree could be made affecting them or their property rights. The correctness of this ruling is not an issue here. The Hurts asserted alternatively in the trial court the position they now maintain on appeal. Citing *Robinson* v. *Shepherd*, 137 Va. 687, 120 S.E. 265 (1923), they argue that although a purchaser cannot have a partial interest forced upon him, yet if he entered into a contract, ignorant of the seller's incapacity to convey him the whole, he is entitled to have the contract specifically performed as far as the seller is able, and to have an abatement of the purchase price for any deficiency in title, or quantity, of the estate. The Hurts also make a policy

argument against protecting Mr. God's interest, pointing out that while they had "substantially performed" their part of the agreement for a period of five years, Andrew God "entered into the picture [merely] because of financing arrangements between his wife and her corporation, and as only an accidental beneficiary having neither emotional nor financial ties to the property in question." We are sympathetic with the plight of the Hurts, but their contentions can be sustained only by rupturing settled rules of Virginia contract and property law; this we are unwilling to do.

Generally when a vendor of real estate is unable to convey all he has agreed to sell, a purchaser may force the vendor specifically to perform the contract to the extent of the vendor's ability to convey, with an abatement in the purchase price for the deficiency. This rule applies, for example, when the area owned is less than that agreed to be sold, *White* v. *Dobson*, 58 Va. (17 Gratt.) 262 (1867), and when the seller owns but a partial interest, *Robinson* v. *Shepherd*, *supra*, or a joint interest in the property, *Clarke* v. *Reins*, 53 Va. (12 Gratt.) 98 (1855). But this general principle is not applicable to cases where a husband contracts to sell land and the wife refuses to join in the conveyance to release her inchoate dower right. Under such circumstances, unless the purchaser is willing to pay the *full purchase price*, deducting nothing on account of the wife's failure to release her dower, the husband cannot be compelled to convey at all. *Haden* v. *Falls*, *supra*. But, conversely, specific performance will be decreed against a vendor when the purchaser is willing to accept a deed from the vendor without the vendor's wife relinquishing her right of dower and asks no abatement in the purchase price. *Ford* v. *Street*, 129 Va. 437, 443-44, 106 S.E. 379, 381-82 (1921); *Steadman* v. *Handy*, 102 Va. 382, 383, 46 S.E. 380, 381 (1904).

The cases we have found in Virginia discuss the foregoing rule as it applies to the wife's dower right, but we perceive no reason why it should not likewise be brought to bear on the husband's curtesy interest.* Consequently, we hold that, under the circumstances of this case, specific performance of a written

---

* Enacted in 1977, Code § 64.1-19.1 provides that "dower" and "curtesy", as those terms appear in the Code, shall be construed as synonymous "for all purposes." Acts 1977, ch. 657. (The same enactment amended Code § 64.1-19 to give a surviving spouse a dower or curtesy interest in fee simple.)

contract to sell real estate owned in fee by a wife whose husband refuses to release his inchoate curtesy interest should not be decreed unless the purchaser is willing to accept a deed without the relinquishment of such curtesy interest, and asks no abatement in the purchase price set forth in the contract. *See May* v. *Bradley,* 201 Va. 295, 301, 110 S.E.2d 520, 524 (1959). There are two main reasons traditionally assigned for such a rule. Should the wife be required to convey at a reduced price, this would tend to exert pressure on the husband and it might induce her to compel him to join with her to the injury of domestic concord. Additionally, it is extremely difficult accurately to value an inchoate curtesy right because of the contingencies involved, even with the benefit of annuity tables such as are found in Code § 55-269.1. Thus, to allow the purchaser an abatement in the purchase price equivalent to what is perceived to be the present value of the contingent curtesy interest would be in effect enforcing specific performance of a contract which the parties had not made. *Mooers* v. *Wilson,* 183 Va. 910, 920, 33 S.E.2d 791, 794-95 (1945), quoting 1 *Minor on Real Property* § 298 at 383 (2d ed. F. Ribble 1928).

The facts of this controversy bring the case squarely under the rule we have just stated, which is supported by a line of consistent decisions extending back at least 136 years. *See M'Cann* v. *Janes,* 40 Va. (1 Rob.) 256 (1842). Mrs. God, the seller, owned the property in fee subject to the contingent curtesy interest of her husband, and not as her sole and separate equitable estate with full power to alienate. He refused joinder. The Hurts sought to force Mrs. God specifically to perform *only* with an abatement. Thus, the trial court erred in granting the relief sought.

For these reasons, the decree entered below on May 27, 1976, and the decree of December 17, 1975 (which included an award of counsel fees and costs to the Hurts), will be reversed in their entirety and a final decree will be entered here dismissing the bill for specific performance.

*Reversed and final decree.*