### Richmond

LOTTIE SHELTON AMOS

V.

EVERLETTE COFFEY, ET AL.

Record No. 820627.

September 7, 1984.

Present: All the Justices.

*Glenn W. Pulley (Patrick H. Musick; Clement & Wheatley*, on brief), for appellant.

*H. Victor Millner, Jr. (Vansant, Millner & Vines*, on brief), for appellees.

POFF, J., delivered the opinion of the Court.

We granted this appeal to consider whether the chancellor erred by excluding parol evidence proffered in aid of the construction of a deed.

R.L. Shelton, by will probated in 1952, devised all his real estate to his wife for life or during widowhood, with remainder in fee to his 12 children. Included in his estate was a farm located in Pittsylvania County southwest of Gretna. In 1957, Lottie Shelton Amos, one of Shelton's children, and her husband executed a deed conveying to B. E. Coffey "all of those certain tracts or parcels of land . . . in or near the Town of Gretna". Following the metes-and-bounds description of the parcels in Gretna (the residue of property Mrs. Amos had acquired from her husband), the deed provided:

> It is the intention of the parties of the first part to convey to the party of the second part all the real estate which they now own in Pittsylvania County, Virginia, including but not restricted to the lands described above.

The interest Shelton's widow held in the farm expired with her death in 1979, and the Shelton children had the farm sold at auction. When the purchaser learned about the 1957 deed, he questioned the title and refused to close. Thereupon, Mrs. Amos filed a

bill of complaint against Mr. Coffey* asking the court to construe the 1957 deed to convey only the real estate located in Gretna and to declare that she is the owner of a one-twelfth undivided interest in the farm.

The chancellor ruled that he would not consider parol evidence concerning the facts and circumstances surrounding the execution of the deed, but he permitted the parties to introduce such evidence to vouch the record for purposes of appeal. That evidence showed that in 1957 Mr. and Mrs. Amos, residents of Florida, were having trouble managing their Gretna property. While on a vacation in Virginia that year, they negotiated a sale with Mr. Coffey. On direct examination, Mrs. Amos' counsel asked her what interest she owned in her father's farm "at the time you signed this deed to Mr. Coffey". Mrs. Amos replied, "Well, I owned a twelfth. I would have owned a twelfth of it when my stepmother [Mrs. Shelton] died."

Mr. Coffey was physically and mentally unable to appear at trial, but his wife testified that following execution of the deed, he told her, "I've bought something, I don't know what I bought, I don't know where it is, I'll probably never see it, it'll probably never amount to anything." According to the witness, Mr. Coffey explained that he had been unwilling to pay the price asked for the Gretna property, but was induced to buy because Mr. Amos told him that the transaction included an interest in other property in Pittsylvania County which Mrs. Amos had "inherited" from her father.

Following the auction sale, R. V. Overbey, a real estate broker, paid a visit to Mrs. Coffey to discuss the title question. He testified that "it was my general opinion that she knew nothing of this." Overbey had a quitclaim deed prepared and delivered to the Coffeys, but they declined to sign.

Adhering to his ruling that extrinsic evidence was not admissible and upholding the deed as written, the chancellor entered a final decree declaring that Coffey's "legal successors in title and interest, are the owners of a one-twelfth (1/12) undivided interest" in the Shelton farm.

The parol evidence rule is a time-honored fixture in the law of this Commonwealth. "[I]n controversies between two parties to

* B. E. Coffey died while the suit was pending, and the chancellor entered a decree substituting Everlette Coffey, Margie C. Dudley, Elva C. Scott, and Kay Dellinger, Coffey's successors in interest, as parties respondent.

a contract, parol evidence of prior or contemporaneous oral negotiations or stipulations is inadmissible to vary, contradict, add to, or explain the terms of a complete, unambiguous, unconditional, written instrument." *Godwin* v. *Kerns*, 178 Va. 447, 451, 17 S.E.2d 410, 412 (1941). Our opinion in *Shevel's, Inc.* v. *Southeastern Assoc.*, 228 Va. 175, 320 S.E.2d 339 (1984), this day decided, summarizes several well-defined exceptions to this rule.

Asserting that she did not intend to sell Coffey her interest in her father's farm, Mrs. Amos argues that the testimony in question should have been admitted "to ascertain and carry out the intentions of the parties who executed the document." But most of the cases she cites involve exceptions to the parol evidence rule not relevant to the issue on appeal.

The only exception pertinent to this appeal is that the rule, by definition, does not apply if the language of the written instrument is ambiguous. "An ambiguity exists when language admits of being understood in more than one way or refers to two or more things at the same time." *Renner Plumbing* v. *Renner*, 225 Va. 508, 515, 303 S.E.2d 894, 898 (1983) (citing *Berry* v. *Klinger*, 225 Va. 201, 207, 300 S.E.2d 792, 796 (1983)). However, a document is not ambiguous "merely because the parties disagree as to the meaning of the language employed by them in expressing their agreement." *Wilson* v. *Holyfield*, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984).

"[W]hen the parties set out the terms of their agreement in a clear and explicit writing then such writing is the sole memorial of the contract and . . . the sole evidence of the agreement." *Durham* v. *Pool Equipment Company*, 205 Va. 441, 446, 138 S.E.2d 55, 59 (1964); *accord Renner Plumbing*, 225 Va. at 515, 303 S.E.2d at 898. In construing the terms of a contract or conveyance, "[w]e adhere to the 'plain meaning' rule in Virginia." *Berry*, 225 Va. at 208, 300 S.E.2d at 796; *see also Winn* v. *Aleda Construction Co.*, 227 Va. 304, 307, 315 S.E.2d 193, 194-195 (1984). "[T]he language used is to be taken in its ordinary signification. . . . If, when so read, the meaning is plain, the instrument must be given effect accordingly." *Virginian Ry. Co.* v. *Avis*, 124 Va. 711, 716, 98 S.E. 638, 639 (1919). "The guiding light . . . is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." *Magann Corp.* v. *Electrical Works*, 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962)

(citations omitted); *accord Camp* v. *Camp*, 220 Va. 595, 597-98, 260 S.E.2d 243, 245 (1979); *Meade* v. *Wallen*, 226 Va. 465, 467, 311 S.E.2d 103, 104 (1984). "This court is not free, nor was the chancellor, to rewrite [a] deed to express an intention that is otherwise indiscernible." *Walker* v. *Bowman*, 227 Va. 209, 214, 315 S.E.2d 206, 209 (1984).

▪ Mrs. Amos insists that "the deed . . . is ambiguous . . . when examined on its face." She says that it is unclear whether the Coffey deed was "intended to include only property which the Amoses 'owned' in fee simple or . . . to include property in which Mrs. Amos had inherited a one-twelfth remainder interest." But the distinction she draws to support her claim of ambiguity does not exist; the remainder interest was an ownership interest which vested in Mrs. Amos when her father's will was probated in 1952 and, thus, was part of the real estate she owned at the time she executed the 1957 deed.

▪ Suggesting another ambiguity, Mrs. Amos says on brief that, prior to the execution of the Coffey deed, she and her husband had sold portions of the Gretna tract to third parties. Consequently, she argues, the "broad conveyancing language" inserted in the deed to Coffey could be construed to have been employed only "to insure that the Amoses conveyed all of the Gretna property which they had retained from the original tract."

We believe that language is simply too broad to lend itself rationally to such a narrow construction. The deed conveyed not only the parcels "in" Gretna, that is, those particularly described by metes and bounds, but also land "near" the town. Moreover, in explication of the habendum clause, the deed recited that "[i]t is the intention of the parties of the first part to convey . . . all the real estate which they now own in Pittsylvania County, Virginia, including but not restricted to the lands described above."

▪ Relying upon the opinion in *Pacific Gas & Elec. Co.* v. *G. W. Thomas Drayage & R. Co.*, 69 Cal. 2d 33, 442 P.2d 641 (1968), Mrs. Amos urges us to hold that the testimony she proffered should have been admitted to enable the chancellor to determine whether the language of the deed expressed the real intentions of the parties to the transaction. We do not favor the rule announced in that case. Indeed, we have only recently said that "[p]arol evidence cannot be used to first create an ambiguity and then remove it." *Cohan* v. *Thurston*, 223 Va. 523, 525, 292 S.E.2d 45, 46 (1982) (citing *Stewart-Warner Corp.* v. *Smithey*,

163 Va. 476, 487, 175 S.E. 882, 886 (1934), and *Coal Riv. Coll.* v. *Eureka Coal Co.*, 144 Va. 263, 280, 132 S.E. 337, 343 (1926)). Applying the "plain meaning" rule, we hold that the language of the Coffey deed was unambiguous and unconditional and that the testimony proffered by Mrs. Amos, which tended to vary and contradict the intention of the parties as expressed in the deed, was inadmissible.

■ Even so, Mrs. Amos submits that the chancellor erred in construing the face of the deed as sufficient to convey her interest in the farm. The fact that the farm was not described by metes and bounds is immaterial. "A deed conveying all the land of the grantor in a certain county, is not void for uncertainty." *Carrington* v. *Goddin*, 54 Va. (13 Gratt.) 587, 609 (1857). But, Mrs. Amos says, the broad general language following the particular description in the habendum clause must be construed to be "limited to things of the same nature as the particulars enumerated."

■ Discussing the doctrine of *ejusdem generis* in *Stephen Putney Co.* v. *R. F. & P. R. Co.*, 116 Va. 211, 220, 81 S.E. 93, 97 (1914), we approved the statement in *National Bank of Commerce* v. *Ripley*, 161 Mo. 126, 132, 61 S.W. 587, 588 (1901), *quoted in United States* v. *Mescall*, 215 U.S. 26, 31-32 (1909), where the Missouri court said that "where the particular words exhaust the class, the general words must be construed as embracing something outside of that class." Later, we said that the doctrine does not apply if "something in the instrument plainly indicates that [the general words] are to be otherwise applied." *Standard Ice Co.* v. *Lynchburg Ice*, 129 Va. 521, 532, 106 S.E. 390, 393 (1921). The Coffey deed expressly provided that the property conveyed by the general words was "not restricted to" the property particularly described.

We conclude that the metes-and-bounds description of the property "in" Gretna exhausted that particular class, and that the general words can only be construed to convey all the real estate the Amoses owned "near" the town in Pittsylvania County.

Finding no merit in the assignments of error, we will affirm the chancellor's decree.

*Affirmed.*